Good morning Mr. Berkowitz, you have one minute for rebuttal and you can begin whenever you're ready. Thank you your honor. May it please the court, my name is Charles Berkowitz, I represent Sylvan Simmons in this appeal. This appeal involves a judgment from a civil trial which took place last year and we're claiming two points here. We're claiming that the trial court abused its discretion in allowing shot spotter evidence, testimony, and reports into evidence. It is our position that these are opinion evidence and the testimony of Paul Green we're also claiming that the court erred in allowing the defendants to play a sound recording to the jury taken from shot spotter. Mr. Berkowitz, can I just ask you for a moment just to separate out the idea of whether or not there should be an opinion about whether it was gunshots or not by Mr. Green. I know you say in the record it was kind of convoluted but let's just put that aside for a moment. Okay. As to the recording itself, it seems like what the district court judge was trying to do with its ruling against you was to say look the recording's coming in and we're going to let the jury hear the noises and make a determination about whether or not those are gunshots or not. That seems to me what the district court was trying to rule. Agreed or disagreed? That was the pretrial ruling, yes? There would be no opinion by Mr. Green. No expert opinion. And the expert opinion would be that these are shots. That would be the expert opinion that the district court was trying to avoid. Correct? Correct. So your argument is that even that, the recording, it was an abuse of discretion, it was irrational, it was arbitrary for the district court to rule that the jury should be able to hear these noises in conjunction with all the other evidence in the case and decide whether or not those are gunshots or not. That's your argument, right? That's part of our argument. How can that be, though? How can it be that in a case where the critical issue was whether or not prior to the four shots by the police officer, right? We agree there were four shots by the police officer. That's undisputed. We agree. The key issue was was there a shot prior to those four shots, correct? Correct. That was the issue to be decided. So there's a recording where there's sounds where at 9-9-0-9 there's four sounds in rapid succession and the gunshot call is at 9-10, right? So we have this technology that picked up four rapid... But it's not technology. It's not reliable technology, Your Honor. If I may explain... Isn't it a remarkable coincidence to say the least that a technology that purports to pick up sounds and identify where they are coming from picked up those four sounds at pretty much the exact moment that everyone agrees they occurred? Also, if you listen to it, you hear the first shot two seconds before that. Because I have listened to it. I assume the district judge had it available and listened to it, too, before making that ruling. If I may, before we even get to that point, I think the main issue on this appeal is, number one, there was no expert witness disclosure ever given by the defendants to allow Paul Green's testimony or to allow the reports or sound recordings or any expert testimony at all. The trial court... That's not expert testimony. This is our technology. This is scientific, technical, or other specialized knowledge which Paul Green testified to. This is in the realm of expert testimony. Why is it in the realm of expert testimony? I mean, it is a recording, and he's the guy who maintains the technology that recorded it. So if there was just a neighbor that picked up a recording of sounds around the same time, that person would testify also, right? Well, ShotSpotter has patented technology and software concerning this, and this is where we get into the area of technical and scientific knowledge. Because the report was offered into evidence, and Paul Green was allowed to testify... Let's say the recording were going to be offered into evidence. Once that's into evidence, you would want the report and to be able to cross-examine the author of the report, right? Because that actually made it ambiguous as to what... The technology thought the sounds were not gunshots at first, and then you got into how that determination was made, and it made it more ambiguous than maybe the recording standing alone, right? It's our position that the recording never should have been allowed into evidence because the technology failed. ShotSpotter got it wrong. No, no, no, but I guess my question is, if there is a recording, the other stuff would... You would want to be able to cross-examine about the nature of it, right, and where it came from. But they didn't lay a foundation to allow the recording and the reports into evidence. Suppose... Just going back to judgment, suppose there was no sound prior to the rapid succession of four. Suppose there was nothing. There was no sound at all. Would you be up here arguing that this is unreliable technology and that still shouldn't come in? The original ShotSpotter recording captured four sounds. The system itself captured four  When they checked all of the different... I forget what they call them, schools or whatever they are. We don't know what happened. We don't know what they did. Okay, but can you answer my question? My question is, if they checked all of their recordings, there was only four sounds in the rapid succession, there was silence, it would be your argument that the jury should not hear a recording that has no sound at all, right before the four? That would be your position? Our position is that ShotSpotter had no room to be involved in this case, okay? This case was about ShotSpotter. This case wasn't about whether Mr. Simmons fired a shot at Officer Fragno. This case is more about whether Robert Bressler was correct in overriding the system and changing the shot count from four to five. Robert Bressler never testified in this case. You know, there was no foundation to allow this... But none of that was allowed into evidence by the court. What was allowed into evidence by the court was the actual recording, not whether Mr. Bressler thought there were five shots or not. We dispute that it's an actual recording. We don't know what that recording is of. But wait a minute, wait a minute. You raised initially, I thought you were characterizing this as a kind of discovery problem, that there was no sort of expert report and you were not in a position to prepare for this. But wasn't that report available to you from the whole criminal case? Wasn't all of that... I mean, there was no surprise about what ShotSpotter had to say. Yeah, but on the criminal case, Judge Taccio threw out the ShotSpotter evidence because he determined that there was no foundation to allow that evidence in. And that's our position. There was no foundation to allow that evidence into this case. That ruling had different issues in it, whether or not it was the best evidence or not. There was an opinion given in that case where there was no pre-trial hearing about it. There was a discovery violation. And it's a criminal case where the burden of proof is on the government beyond a reasonable doubt. So that's a whole different set of rulings than what was going on there. But the judge realized the danger of the ShotSpotter evidence as being unreliable and that there was no foundation for its admission. And that was the argument I was making. Judges make discretionary rulings about the admission of evidence. One judge can say one thing. One judge can say a different thing. And they can still both be acting within their discretion, especially when one is acting in a criminal case on one record with one set of things that happened and the other judge is acting in a civil case. So maybe just instead of just referring to a different judge, explain why you think that there was no foundation here. We have a recording of what was happening at the time in question that was picked up. You admit the recording and then also have testimony on all of the circumstances surrounding it and all of the possible interpretations of it and where it came from. We dispute the recordings. We don't know what the recordings are of. Basically, foundational... I'll let you finish. If I may, with the foundational issues, Mr. Green had no direct knowledge of any of the material facts. He never spoke with Mr. Bressler. He had no involvement in this matter until six days after the shooting. Green said that he heard the original recording, but he did not analyze it. Green doesn't know what Bressler did that night. He has no idea if the audios were edited or altered or modified in any way. That came out during the trial. He does not know... At the trial, you crossed him on that and he said that if there had been any modification, the metadata would show that there was a modification. So the jury heard that line of questioning. Yeah, but he also said he doesn't know if there's any other audio clips that are out there that he did not analyze. And the jury heard all of that evidence. Yes. They knew everything about this and were in a position to make their own decision. But this witness should not have been allowed to testify. There was no expert disclosure. He's getting into scientific and technical and specialized knowledge. But just a different question. So the one question is, you don't think it's a reliable recording? No. No, not at all. In fact, the government does. And so, in fact, the recording is admitted, but you can explore across examination all these questions about the reliability of it, right? But the jury heard five... But then the second question is, you know, is it so technical that it was essentially expert testimony, right? That's a separate question from the reliability of it, right? Those are two different questions. And your argument about the expert testimony is what? That interpreting the sounds on the recording is such a scientific endeavor that it had to be done by an expert? No, I wanted to lay the foundation. Where did this recording come from? Who searched the sensors? What sensors were searched? How did this recording come up? The original ShotSpotter recording, the system itself recorded four impulses. The question is, is how did that fifth impulse get in there? And, you know, Paul Green even acknowledged that he does not know what Mr. Bressler did concerning the one additional round. That was in the supplemental appendix at page 62. So it's like, what happened? How did this additional round get in there? It wasn't in the original recording. Basically, this evidence shouldn't have been allowed in because, number one, it wasn't reliable and an adequate foundation was not allowed. When you say it wasn't in the original recording, what is the original recording and how do you know about that? The original recording picked up by ShotSpotter by the system recorded four impulses and what happened is that Bressler was alerted about the gunfire because an officer from the Rochester Police Department called ShotSpotter and told them that there was an officer involved shooting. This is on the record. Robert Bressler then says that he went to search and he found an audio which the system has labeled as three impulses helicopter. So the system originally misidentified it as helicopter sounds. So then Bressler listened to it and then he updated it from three to four rounds and he reclassified it as multiple gunshots. But again, all of this, there's a recording that exists. You have not suggested to me yet that there was a different recording that was then altered as opposed to that a larger portion of the recording was listened to, that the people who did not testify may have thought there were five shots. None of that is really about a different recording. The jury listened to an audio recording with four impulses. How many recordings did the jury actually hear? I believe that they listened to the one which had five impulses. And I'm trying to remember during the trial there was one sensor that had four impulses. And that was mentioned in my brief. So it's confusing. And it's also explained at the trial before the jury, right? That the automated system thought it was three impulses and it was a helicopter and then a person reviews it and makes a different determination and so on. You could explore all of that, right? The system failed. It was unreliable. And therefore the jury should not have heard anything about shots fired because it was unreliable. It was unreliable. There were four or five impulses. What was unreliable was the analysis that it was helicopters, right? It clearly wasn't helicopters. Well, and plus the fact that... But we're not relying on... The evidence before the jury is not that the ShotSpotter system called this shots. And that's unreliable. How the ShotSpotter computer characterizes things. First of all, it didn't characterize it as shots. And the jury knew that. So it's not... We don't have here a case where some of the defendants are relying on a characterization by a mechanized system that can't be trusted to make a characterization like that. Right? That's not what we have here. We have a question of is what was on the recording something that was legitimately picked up as sounds emanating from that place?  The place where at least four of the impulses that are recorded on that recording are indisputably things that happened at that pretty much exact moment at that pretty much exact location. But it was Robert Bressler who gave the location, OK? No, it was a Rochester police officer who gave the location to ShotSpotter. The whole question, it's confusing. Is this the actual shooting event itself? The original recording from ShotSpotter had four impulses, OK? And then here we have all this activity happening... You think based on all of the testimony that came out at trial about how it worked and what was initially picked up and how the system was originally evaluated shows the system failed, right? Correct. So you put that in front of the jury, right? And you argued that this is not reliable. We did, but that's why the jury never should have heard this evidence because it's only confusing. There's no question that it's unreliable. But if we thought that there was a question as to whether it was a reliable recording or not, isn't the answer that that goes to the jury and you can explore that in cross-examination? We moved in limine to preclude it and the judge did not. And these are the arguments I made for precluding it from trial because it had the ability to confuse and mislead the jury and, you know, the jury heard an audio with five impulses on it and here Mr. Green's telling them that, you know, hey, this is it and, you know, we had no expert disclosure at all. He wasn't permitted to testify as an expert. You said you had no expert disclosure at all. You knew that this was coming. No. No? No, I didn't. I didn't know that the city defendants were going to be calling him. ShotSpotter got let out of the lawsuit on the summary judgment motion. So after ShotSpotter was let out of the lawsuit, the city never filed an expert disclosure for Paul Green. He had been deposed. There was a deposition of him, right? I did take a deposition of Paul Green before the summary judgment motions. So you had, at the time of the trial, you had all the information you needed about to cross him on all these things as was pointed out and you did. It's impossible to cross him because he doesn't have any knowledge as to what happened. Okay? And that's why all these points in the brief. You know, how am I supposed to cross-examine Paul Green who doesn't know what happened on the night in question? He doesn't know who searched the sensors. He doesn't know what happened. We got it. All right. Thank you very much. Yeah. And then, lastly, the other- You can wait for your rebuttal for the-  Point two, I guess. You can wait for your rebuttal. All right. All right. Mr. Campolieto. Good morning, Your Honors. John Campolieto for the City of Rochester Defendants. I guess all of this, all the questions that Your Honors had, could be summed up in the order for the motion of limine, a motion in limine, which is in the appendix 299 to 303, the section that's relevant. And that is that the trial judge, Judge Gerasi, found that despite all the protestations, the plaintiff, the appellant, had the chance to cross-examine, had the chance to submit his own expert if he wanted to. To say that this was unknown, that this type of evidence would be an issue in the trial, is disingenuous at best. Did the defendant have to call these other actors from ShotSpotter that he says made other decisions about how the recording was evaluated and the report was compiled? Yes. In fact, the owner, the person that invented ShotSpotter, was deposed, the owner of the company. Now, can I ask you, the judge seemed, and I think you'll agree with this, to want to avoid any opinion coming from Mr. Green about whether or not these impulse noises were shots or not. That was the district court's ruling, right? Yes, and the judge recognized that there was no expert. Okay, but the thing that confuses me is then you went ahead and introduced Mr. Green's report which says ShotSpotter detected a multiple gunshot incident and then you went through with him the shot timeline, timeline of discharge of shots. Everything in the exhibit refers to this as shots. There's no indication about this earlier classification as helicopter. During his testimony, he kind of indiscriminately used the word shots with impulse noise a couple of times. You tried to, I guess, correct him when he answered multiple times using the term shots. So, it seemed like the district court's ruling kind of got muddled in how it played out? It did a bit and that probably was the nature of the case. Everybody knew what the ShotSpotter is. It could have been a much simpler direct. It could have been he got up there, here's the technology, here's how it captures noises, here's the recordings it captured that day. And for his direct, he could have got off the stand instead of introducing his report and making all these other answers, I guess, that were unnecessary to just have the jury evaluate the sounds. The sounds were part of the report, so in order to... The sounds were part of the report, but there was a lot of other stuff in the report. There was no, as I read the record, there was no objection at the time when arguably the witness exceeded what was allowed. There was no request for curative instruction about that. There was no separate motion to redact the report. There was an argument in Lemonet that all of this should be kept out. But when the judge made a very specific ruling about what would be allowed and what would not be allowed, the plaintiff never revisited that and asked for, you know, to the extent that now, as I read it, as Pietro Bianco just read it, it sure sounds like there is an opportunity there to pop up and say, wait a minute, get a sidebar and say, I'd like you to direct the defendant's counsel not to use the word shots. I'd like to direct the jury to disregard anything that was just said that used the word shots. I'd like this thing to be redacted in this way, which could have been done in Lemonet also, as a fallback argument. But none of that happened. That's correct, Judge Lynch. And in fact, the plaintiff's attorney used the word gunshots himself. Used the word shots himself in cross-examining the witness. Now, Judge Bianco, you're correct. I did make attempts to correct it whenever it occurred and I think it occurred twice, if I remember correctly. The judge made this instruction and it was, in fact, it was the opinion evidence that he did not want disclosed or elicited. And I attempted, through the report, to keep this factual. In fact, in my brief... He didn't want it elicited from him and I think he testified, usually saying impulsive noises, maybe when somebody says shots and a question to him, he starts talking about, like it gets confusing, I guess. But he is testifying in order to introduce the report and he does explain the process by which the report includes its gunshots, right? Like that's part of what the report does.  So the idea is the conclusion that it's gunshots is admitted, you know, as a conclusion of the report that's a record of shotspotter and he's testifying about how that's generated, right? That was going to come in. The report was going to come in. Wait a second. Let's just be clear on this. The report, the shotspotter didn't conclude it was gunfire. The system concluded it was helicopter noises. The report that came in was Mr. Green's report where he opined that it was gunshots, right? He listed what the helicopter, it was classified as helicopter, all the factual issues he listed in his report and we listed in our brief what the testimony was. And in my opinion, to use that word, it was factual, factually based. It was not expert disclosure. Opinion in terms of his testimony was not... Well, the explanation for how they reached that conclusion is sometimes the system misidentifies it and then we do a human review and then they evaluate it and that's how we generate the report, right? Yeah, and that's correct. And that's the difference between the criminal case and the civil case here. In the criminal case, the report and the testimony was expert testimony but it was also used to prove that he committed the crime. In our case, what we were using and our intended use of the evidence was to show what was happening when our officer ran up the driveway into a dark backyard as I mentioned in my brief. That was the reason that we used that testimony. And why does that make a difference here? Well, it can make a lot of difference in terms of if qualified immunity was needed, this would have played a part in that. If we were showing what the officer's testimony it would back up his testimony. It would be used to provide context to the jury. But it would access his testimony if it's gunshots, right? I mean, if there was a helicopter there, obviously there wasn't. But if there was a helicopter there that would not be a defense to him shooting the plaintiff, right? Yeah, and that all was figured out on cross-examination of Paul Green. What is a helicopter noise? Why did it classify as helicopter noise? It's a default term that the shots were heard. Can I ask you a quick question about, I think Mr. Burkwood is going to get to it, about the admissibility of the altercation with the gunshots at the location prior.  And he argues that was prejudicial, it went to propensity. And your argument was that it goes to the motivation of why he would have possessed a gun on that day, right? Why he would have a gun possibly brought. Not that particular part of the testimony, which was the incident        before the incident. The gunfire at the house an hour before the incident. Right. That had nothing to do with the plaintiff. He wasn't there. It wasn't his act. It was just an act of why the police had a presence in the neighborhood on that particular... Oh, I thought your argument was that it would show motivation for why he would feel the need of going to the store to arm himself because somebody was firing shots outside his house an hour before. Am I missing that? That wasn't the argument? That was the secondary argument.  Correct, Your Honor. But the question is, is that 404B evidence? Does that suggest any illegal conduct or propensity to violence of Mr. Simmons? That's about what other people did. He was not doing anything criminal during that incident. Judge Nusseri and Judge Bianco, you're correct. But it was not a propensity to violence. It was, in my opinion,      In terms of the trial, the three-week trial, we were showing that there was reasons for why he would have a gun. The argument from the plaintiff was he didn't have a gun at all, even though the gun was found next to him. I see that. It's not impossible for that kind of evidence to be propensity evidence. If you had argued that, look, he lives in a neighborhood where everybody's shooting everybody all the time and, in fact, there's shootings happening at his house all the time and so you should infer that he's just like those people, like that sounds kind of like a propensity argument. But you're saying it was relevant because he argued that he didn't have access to a gun and so the fact that there was a shooting right before this other incident would suggest that he did it. There were guns present on his property. An argument could be made that it was a 403B and it could have been excluded under a 402 of the rules of evidence but there were so many other issues that stem off of that issue. Can I just read what you said in your summation because it troubled me a little bit. You said this is a case about him making bad choices and on this particular issue you said the bad choice of the plaintiff started when he chose to have individuals at his house on April 1, 2016 who shot a gun up in and around his house on 5 Emil Street where his children had been playing outside minutes before. That's how you used this proof in your summation. You didn't make any reference to it explains why he had a gun an hour later. You didn't make reference to and this is why the police officers were responding. You seem to suggest like he's a bad guy he lets his kids play out in the street wearing this gunshot and that he chose to have these bad individuals who have a gun at his house. Isn't that problematic? That's I would note first, Judge Bianco, that the closing argument is not evidence. There's many different aspects. But if the proof if his house being offered is to show his motive for having a gun or that the police this is why the police were in that area why would you say that you know he chose to have individuals in his house who shot a gun up in the air and his children were playing outside. What I was also trying to show or what I would argue I was trying to show was there was a reason that the police acted in certain ways during this night. There was three weeks of testimony about how bad the police were. What I was trying to show were there were bad things that happened in this neighborhood that required the police to patrol the area both at 8 o'clock and also at 9 o'clock and reasons why the officers were taking special attention to the car that was driving to the location where they had previously been. Thank you. All right. Mr. Berkley you have one minute to respond. Thank you, your honor. I'll try to be quick. The shot spotter conclusions were essential to the defendant's case because there was no physical evidence linking Mr. Simmons to the gun that they claimed to have found at the scene. There was no DNA on the gun, no fingerprints and Mr. Simmons even asked to be tested for gunpowder residue. So basically the shot spotter evidence is what they needed and the bad character and bad behavior and bad act evidence that's what they relied upon to put a gun in Mr. Simmons' hand. It's our position that the 810 incident was totally irrelevant and highly prejudicial. Mr. Simmons had no knowledge of what happened with that incident because he was in the house. His kids were in the house.  Detron Parker testified he didn't even hear the earlier gunshot and Mr. Simmons wasn't told about that incident until right before he went to the store with Mr. Parker. I know but it could explain why he was have a gun right? Even if he wasn't involved in it it didn't say anything bad about him if there's gunshots right outside his house and he's going to the store and he has a gun it would explain why he would carry it. But Mr. Simmons testified that there is gunfire in the neighborhood and he testified that he wasn't afraid at all once he once he learned that there had been some gunfire somewhere in the neighborhood. Okay so Mr. Simmons testified to that at trial he wasn't scared there was no reason Well he testified to make it more likely rather than less likely that he would have a gun right? But there was no evidence that he was he was armed or that he was afraid or concerned so I mean the evidence was irrelevant and highly prejudicial the collecting bullets that issue came out as well those bullets were found as a result of a search on Mr. Simmons house years earlier Well even in his testimony he denied collecting bullets right? So like he made that relevant But I objected to that on the motion in Lemony and that's when defense counsel assured the court that he had no intention he disavowed any intention of introducing such evidence okay? So we were ambushed at trial caught off surprise when that question came up I sidebar with Judge DeRacy on the issue but he still allowed it in but still Why is the thing about the earlier incident highly prejudicial I mean if the whole case is about whether he shot at a police officer why is it so much more highly prejudicial to say that there was a shooting incident at his house in which he was not involved earlier in the evening There was an incident an hour before I don't know where the shooting happened it was in the general vicinity of Mr. Simmons home but still the defense was painting a picture that this was a bad neighborhood and that everybody has to be armed and dangerous that everybody carries a gun and this is the message that they conveyed to the jury in this case that Simmons must have had a gun he had a gun this was his gun and that's why this came in Thank you Mr. Berkley Thank you Mr. Campilotto It was a reserved decision Have a good day Thank you, you too Thank you